FILED
MAR 17 2011
ROBERT D. DENNIS, CLERK
U.S. DIST. COURT, WESTERN DIST. OF OKLA.
BY _____ DEPUTY

IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF OKLAHOMA

JERRY L. THOMAS, )
)
    Plaintiff, )
)
vs. ) No. CIV-10-308-W
)
DAVID PARKER et al., )
)
    Defendants. )

## ORDER

On February 11, 2011, United States Magistrate Judge Valerie K. Couch issued a Report and Recommendation in this matter and recommended that the Court construe the Motion to Dismiss/Motion for Summary Judgment filed by defendants Becky Guffy, Jo Gwinn, Amy Madison, Debbie Morton, Brandy Page, David Parker, Rodney Redman, Jim Reed and Shannon Reed as a motion seeking relief under Rule 56, F.R.Civ.P., and grant the motion in the defendants' favor. The parties were advised of their right to object, and the matter now comes before the Court on the Objection to Report and Recommendation [Doc. 37] filed by plaintiff Jerry L. Thomas.

Thomas, proceeding pro se, commenced this action on March 26, 2010, and asserted two (2) claims for relief that arise out of his prior incarceration at James Crabtree Correctional Center ("JCCC") in Helena, Oklahoma. The nine (9) defendants are either employed at JCCC or employed by the Oklahoma Department of Corrections ("ODOC").[1]

---

[1] Parker is the Warden at JCCC, Guffy is the Warden's Assistant and Redman is the Deputy Warden. Gwinn is a Unit Manager, Madison is a Notary Public and Page is a JCCC Case Manager. Jim Reed is employed as a Security Manager, and Shannon Reed is employed as a Canteen Worker. Morton is the Designee of the Director of the Oklahoma Department of Corrections.

On April 20, 2007, JCCC officials confiscated a prayer cap found in Thomas' cell. Thomas was charged with the misconduct offense of possession/manufacture of contraband and was and found guilty. Thirty (30) days of earned credits were revoked.[2]

In his complaint, Thomas has set forth his two claims as follows:

> Count I: The defendants violated the Plaintiff's 1st and 14th amendment rights by charging and convicting him of possession of contraband in retaliation for his attempting to file a grievance against . . . Shannon Reed because she denied him access to the court by refusing to allow him to mail seven grievance appeals to the Designee of the [O]DOC Director by filing out an indigent disbursement.

Complaint at 3, ¶ C(1)(A)(1).

> Count II: The defendants conspired together to deny the Plaintiff's 1st and 14th amendment rights to freedom of religion, access to the court by their writing him up for possession of contraband in retaliation.

Id. ¶ C(1)(B)(1).

In the instant Motion to Dismiss/Motion for Summary Judgment, the defendants have contended that they are entitled to dismissal of, or judgment on, Thomas' claims because he has failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act of 1995 ("PLRA"), as amended, 42 U.S.C. § 1997e et seq.

---

[2] On May 25, 2007, Thomas brought a multi-count complaint seeking relief under title 42, section 1983 of the United States Code and alleged therein an almost identical claim of retaliation. Thomas v. Parker, No. CIV-07-599-W. The Court, as recommended by Magistrate Judge Couch, dismissed the claim because it was not then cognizable under section 1983. E.g., id. (Docs. 58, 65). The United States Court of Appeals for the Tenth Circuit affirmed. Thomas v. Parker, No. 08-6185 (March 26, 2009).

In a subsequent federal habeas action brought pursuant to title 28, section 2241 of the United States Code, Thomas challenged the validity of his misconduct conviction and argued that he was charged with possession of contraband in retaliation for exercising his first amendment rights to file grievances. The Court found Thomas' disciplinary proceeding was the result of retaliation and ordered Thomas' misconduct conviction be expunged and his earned credits be restored. Thomas v. Parker, No. CIV-08-1321-W. The Tenth Circuit again affirmed. Thomas v. Parker, No. 09-6096 (10th Cir. November 23, 2009).

2

Because it has examined material outside the pleadings in resolving this matter, the Court, as Magistrate Judge Couch has suggested, has construed the defendants' motion as one seeking relief under Rule 56, F.R.Civ.P. Accordingly, in determining whether summary judgment is appropriate in this case, the Court must decide whether "there is no genuine dispute as to any material fact and [whether] the . . . [defendants are] entitled to judgment as a matter of law." Rule 56(c)(2), supra (amended December 1, 2010). At this stage of the litigation, the Court does not evaluate the credibility of the witnesses, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986), or "weigh the evidence and determine the truth of the matter . . . ." Id. at 249. Rather, the Court must decide "whether there is a genuine issue for trial . . . [and] there is no [triable] issue . . . unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50 (citations omitted). The Court's inquiry must be whether the evidence, when viewed "through the prism of the substantive evidentiary burden," id. at 254, "presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52.

In making this determination, the Court must "'examine the record and all reasonable inferences that might be drawn from it in the light most favorable to [Thomas,] the non-moving party.'" Pinkerton v. Colorado Department of Transportation, 563 F.3d 1052, 1058 (10th Cir. 2009)(quoting T-Mobile Central, LLC v. Unified Government of Wyandotte County, 546 F.3d 1299, 1306 (10th Cir. 2008)(citations omitted)).

Furthermore, in applying these standards to test an affirmative defense that would entitle the defendants to summary judgment, the Court is mindful that the defendants

3

must demonstrate that no disputed material fact exists regarding the affirmative defense asserted. If the defendant[s] meet[ ] this initial burden, the plaintiff must then demonstrate with specificity the existence of a disputed material fact. If the plaintiff fails to make such a showing, the affirmative defense bars his claim, and the defendant[s] . . . [are] then entitled to summary judgment as a matter of law.

Hutchinson v. Pfeil, 105 F.3d 562, 564 (10th Cir. 1997)(citations omitted).

The PLRA, upon which the instant defendants have relied, provides in relevant part that "[n]o action shall be brought with respect to prison conditions . . . by a prisoner confined in any . . . correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[E]xhaustion is mandatory under the PLRA," Jones v. Bock, 549 U.S. 199, 211 (2007), and because PLRA exhaustion is an affirmative defense, e.g., id. at 216, the burden is on the defendants to prove that Thomas has failed to exhaust all available administrative remedies. E.g., Roberts v. Barreras, 484 F.3d 1236, 1241 (10th Cir. 2007).

> [T]o properly exhaust administrative remedies prisoners must "complete the administrative review process in accordance with the applicable procedural rules"–rules that are defined not by the PLRA, but by the prison grievance process itself. Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to "properly exhaust." The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

Jones, 549 U.S. at 218 (quoting Woodford v. Ngo, 548 U.S. 81, 88 (2006)).

ODOC requires inmates prior to filing a lawsuit to timely and properly complete four (4) steps to administratively exhaust the "Inmate/Offender Grievance Process" outlined in OP-090124.[3] Section IV of OP-090124 outlines the two (2) informal steps. First, the

---

[3]The Court has cited to the Inmate/Offender Grievance Process submitted as part of the defendants' Special Report, Attachment 6, which became effective May 3, 2007.

4

inmate must try to resolve his complaint by talking with the appropriate staff member within three (3) days of the incident. OP-090124, Section IV(A). If the complaint is not resolved, the inmate must proceed to step two and submit within seven (7) calendar days a "Request to Staff" ("RTS") to the appropriate staff member, "stating completely but briefly the problem." Id. Section IV(B).

Section V of OP-090124 outlines the submission and review of formal grievances. If the complaint is not resolved informally, the inmate must complete and submit to the reviewing authority[4] an "Inmate/Offender Grievance Report Form" within fifteen (15) calendar days of the incident or the date of the response to the Request to Staff together with the Request to Staff used in the informal process and the response thereto. Id. Section V(A).

> If the inmate/offender does not follow instructions as explained in . . . [OP-090124] and on the grievance forms, the grievance may be returned unanswered for proper completion. If allowed, the inmate/offender must properly re-submit the grievance . . . [and] [c]ontinued failure to follow instructions may result in restrictions being imposed . . . .

Id. Section V(A)(7).

"The reviewing authority will screen the grievance to determine . . . [w]hether the grievance and 'Request to Staff' form were submitted in a timely manner[ and] . . . [w]hether the instructions for submitting a grievance were followed," id. Section VI(A)(2)(c)-(d), and respond. At step four of the grievance process as set forth in Section VII, the inmate may appeal the reviewing authority's response to the administrative review

---

[4]OP-090124, Section I(D) defines "reviewing authority" as "[t]he facility head . . . where the incident occurred and to whom the grievance is first submitted."

authority.[5] Id. Section VII(B). Obtaining a final ruling from the administrative review authority completes the DOC's exhaustion process. Id. Section VII(D)(1).

OP-090124 also permits emergency or sensitive grievances to be submitted, and in that connection, authorizes that such grievances

> may be submitted directly to the reviewing authority without informal resolution when the complaint is of a sensitive nature or when substantial risk of personal injury or other irreparable harm exists.

Id. Section VIII(A). The appeal of the reviewing authority's response to such a grievance, like the appeals of other grievances, is governed by Section VII, and if a determination is made by "[t]he appropriate reviewing authority . . . that a grievance is not of an emergency or sensitive nature, the grievance will be returned to the inmate/offender," id. Section VIII(C), and he or she will be advised "that the standard grievance process must be followed." Id.

Section IX of the Inmate/Offender Grievance Process as set forth in OP-090124 pertains to abuse of the grievance process.[6] Section IX(B) outlines the restriction process, and Section IX(B)(1) provides that a restriction "may be imposed for a period not longer than 12 months," but that "[f]urther abuses are grounds for extending the restriction." Id.

---

[5]OP-090124, Section I(E) defines "administrative review authority" as "[t]he director . . . or [his or her] designee to whom the formal grievance is submitted for final appeal."

[6]Section IX(A) provides in part:

The appropriate reviewing authority . . . may determine there is abuse or misuse of the grievance process, and may restrict the inmate's/offender's capacity to submit a grievance. The abuse may be, but is not limited to . . .

c.) the repeated submitting of grievances or "Requests to Staff" about an issue previously addressed by staff in their written response . . . .

6

Section IX(B)(1). An inmate, for "all [his or her] grievances submitted during the restriction period, . . . is required to show cause why . . . [he or she] should be permitted to grieve." Id. Section IX(B)(2).

Thomas was placed on grievance restriction beginning March 28, 2007. See Special Report, Attachment 22. Thus, Thomas was required to provide with any grievance he submitted thereafter

> a duly verified affidavit [that] . . . stat[ed] that all contents of the grievance [were] . . . true and correct . . . [and that] contain[ed] a list by grievance number, date, description, and disposition at each level, of all grievances previously submitted . . . within the last 12 months.

OP-090124, Section IX(B)(2)(a).

As Jones commanded, the inmate "must 'complete the administrative [grievance] . . . process in accordance with the [prison's] applicable procedural rules.'" 549 U.S. at 218 (quoting Woodford, 548 U.S. at 88). "'An inmate who begins the grievance process but does not complete it is barred from pursing a [federal] claim under the PLRA for failure to exhaust his administrative remedies.'" Fields v. Oklahoma State Penitentiary, 511 F.3d 1109, 1112 (10th Cir. 2007)(quoting Jernigan v. Stuchell, 304 F.3d 1030, 1032 (10th Cir. 2002)). "[S]ubstantial compliance [with the prison's grievance procedures] is insufficient." Id. (citation omitted).

On April 23, 2007, Thomas submitted an Inmate/Offender Grievance Report Form, which he labeled "Sensitive Grievance," directly to Justin Jones, ODOC Director. Thomas complained therein about the confiscation of his prayer cap on April 20, 2007, and about defendant Jim Reed's "personal vendetta" against him because he had filed a grievance against Jim Reed's wife, defendant Shannon Reed. Thomas sought protection from

7

defendant Parker and his alleged "co-conspirators." Thomas did not however advance any allegations in that document that pertained to the misconduct charge.

Defendant Morton returned the grievance, designated ODOC-07-871, unanswered with the following notation:

> Despite repeated instructions from this office, you continue to improperly file your issues. Until your issues are filed correctly, they will be returned to you without a response.

Special Report, Attachment 48. Thomas was further advised by defendant Morton that he would "be allowed one opportunity to correct and resubmit this grievance," id., and that "[i]t must be received . . . within ten calendar days . . . ." Id.

Examining the record in the light most favorable to Thomas, the Court finds that no evidence has been presented that Thomas corrected and/or resubmitted this grievance. Accordingly, because there are no genuine disputed issues with regard to Thomas' failure to comply with the ODOC's Inmate/Offender Grievance Process, the Court finds that Thomas has not properly exhausted his administrative remedies as required by section 1997e(a)[7] as to his claims of retaliation and conspiracy that arise out of the defendants' conduct on April 20, 2007.

Accordingly, the Court

(1) upon de novo review of the record, CONCURS with Magistrate Judge Couch's suggested disposition of the defendants' Motion to Dismiss/Motion for Summary Judgment and ADOPTS the Report and Recommendation [Doc. 36] issued on February 11, 2010;

---

[7] Relying on Davis v. Barrett, 576 F.3d 129 (2d Cir. 2009). Thomas has argued that his pursuit of the federal habeas action satisfied the exhaustion requirements of section 1997e(a). In light of Carr v. Brill, 187 Fed. Appx. 902 (10th Cir. July 10, 2006)(cited pursuant to Tenth Rule 32.1), and Magistrate Judge Couch's analysis thereof, the Court disagrees.

8

(2) GRANTS the defendants' Motion to Dismiss/Motion for Summary Judgment [Doc. 22] filed on July 27, 2010, which the Court has construed as a motion seeking relief under Rule 56, <u>supra</u>; and

(3) DISMISSES without prejudice Thomas' claims for relief for failure to exhaust administrative remedies.

ENTERED this _17th_ day of March, 2011.

LEE R. WEST
UNITED STATES DISTRICT JUDGE